of our trio of Empire Indemnity cases. This is Creekside Crossing v. Empire Indemnity. We'll let counsel switch out and then begin. Your Honor, it's been 20 years since I've been before the 11th and I've got three cases in one morning, or actually six cases in one morning, so I appreciate your- Your cup floweth over. So, again, this is Creekside and this was one where, like Positano, my client was notified of the loss eight months, seven months later, and ultimately there was a $13 million amount that was claimed. It's quantified well, like a year and a half after the storm. There was a lawsuit to compel appraisal. Now, I should mention here that Judge Badalamente initially agreed with us on some of these points because there was a petition to compel appraisal and he said that wasn't recognized and so he allowed them to replead. And then he said, after the repleading, he says, well, look, you've got your breach of contract, you've got your declaratory relief count, but I find that your breach of contract for underpaying the claim isn't sufficiently pled. And so, but you still pled breach of contract for not going to appraisal, so I'm not going to dismiss the complaint. So, from that order, there was the only thing that was in play, was not underpayment of the claim, but just a breach of contract to go forward on appraisal, or a breach of contract and the request for appraisal. And in that order, the court noted that there had been a pending motion to compel appraisal and thought that it should be a summary judgment motion and so he required them to plead a motion to compel appraisal. So, instinctively, courts, and he's not the only one, he later retracted that and said, you know what, I was a little too harsh on reviewing the complaint per Twombly and so I think it does plead underpayment and I think that's what gave him the vehicle to essentially delegate to appraisers what would be a jury decidable issue, potentially, on the breach of contract for underpayment of the claim. That's sort of what's going on is the court is. How do you have, if the claim is an underpayment of the claim, okay, the only way to determine if there was truly an underpayment is to have an appraisal, correct? Because the appraisers have to make determination that you still owe X amount or you don't owe X amount based on the damage, correct? Yeah, I disagree with some of the underlying aspects of that and here's why. As we know from the nationwide case, appraisers now, before it was assumed that appraisers and there's lots of other jurisdictions only determine the value of what would be a covered loss. If we were, you don't see any Alabama cases up here very much because Alabama Supreme Court disagrees with Florida as to what appraisal can do. It says, look, you gotta agree that this damage, all of the damage is covered before you can trigger valuation determination by the appraisers. In Florida, not only do they look at the present state of affairs with the damage, which is easy, they look at history and without subpoena power, without any of that, the Supreme Court appraisers are supposed to make causation determinations, which is a far greater thing that they have to do than what was otherwise the case. And so getting back to your question, Your Honor, they really determine valuation and ultimately, there should be a court determination on coverage. So they don't determine what's owed, they determine the value, but in Florida, not only do they determine the value, but they determine causation and causation is important to coverage because the policy only covers things, for example, that happened during the policy period. Council, there's an important predicate you're leaving out and that is, there has to be at least a partial agreement regarding coverage and it's the extent, your opposing counsel in the other case called it the scope. We can argue about the terminology, but it's the what, is it this much was covered or this much is covered, but there's an agreement that something is covered. That's what the Florida courts have said. So there is that predicate of an agreement on coverage and really, this gets back to Judge Joe Flatt's question, which is, there's then two ways to do this. We can have a jury trial and figure it out or we can sort of bring in these other folks to make that call. I still go back to though, if we're telling these folks that they have to make that call, doesn't there have to be these showings that are made to get there and what your opposing counsel says is, you're trying to have it both ways. You're trying to say, you have to make these showings, but they can never make the showings because it can never be irreparable. How do you answer that? Yeah, I think ultimately, I answer that by using what we have in this federal forum as the basis to determine whether or not entitlement to this kind of equitable relief is justified under federal equity. Is it not inherently irreparable if you're entitled to this alternative, we'll call it this alternative dispute resolution. I'm not sure that's the best way to phrase it, but we'll call it that. If you're entitled to that and now it's being taken away from you, how is that not irreparable? Well, Your Honor, there's lots of contracts with specific performance. There's lots of contracts in which, if I were to go buy a car, if I go to a dealership and I contract for them to sell me that car, if it's just a plain old Toyota and they don't sell me the car per the contract, I can't ordinarily come into court and ask for specific performance. That's true, but this is not just a Toyota. In other words, if the court had said, well, I mean, I don't really like how the appraisal is done under the contract, so you can have this other kind of appraisal, that might be a little bit, you might be closer to the mark, in my view. But what we're talking about here is you have a remedy under the contract that everyone agrees to as a matter of right, and I am taking that away from you. And the only way to get that is to go through an entire trial with a judgment at the end that you're then going to appeal. How is that not irreparable to the insured? Because under what I've read in terms of the case law on this issue, specific performance requires irreparable, and if there's an adequate remedy at law, money is always adequate remedy. Counsel, haven't the parties already agreed when they make that option that there is no adequate remedy at law? This is the remedy. Yeah, I'm not sure that that's... That's a question of what the parties intend. Yeah. Is that not what they intended? Yeah, there is always an intent, for example, in my core example, to buy a certain product. But it's a waste of time if it's not intended as the remedy by option, election. Neither side has to agree to appraisal. No, neither side has to vote. If you have an agreement which allows either side to opt for this mechanism of resolving the loss, then they have a contract right to do that. And if that's the intent of the parties, then a court can order you to do it. Well, it would have to... It's a jury trial. Right, I think if it's going to order the parties to essentially take the place of a jury on that issue, assuming we're past the... Yeah, you're carving out part of the arrangement and you're not giving it to the jury. Right, if the jury is... This is another issue, and I'm glad you brought that up. Ordinarily, things that oust the court of jurisdiction, if we're sending things to the jury as we framed it here, it would have to be an arbitration, ordinarily. An appraisal is not arbitration. We have to have... Let's just go back to Florida law, because this contract is under Florida law, correct? Yes. All of them? Yes. So under Florida law, and I'm just quoting from the Anushvar case, which is an unpublished case, but it cites to Florida law. Under Florida law, the purpose of appraisal clauses in insurance policy is to, quote, and discourage the filing of needless lawsuits. When an insurer admits that there is a covered loss, which here, you admit there's a covered loss, under an insurance policy with an appraisal clause, but there is a disagreement on the amount of loss it is for the appraisers to arrive at the amount to be paid, it doesn't go to a jury. How does it go to a jury? That's the whole point of appraisal clauses. Right. Under Florida law. And we're not under Alabama law. We're under Florida law. Right. Your Honor, there may be some elements. For example, appraisal has sort of taken away, if there had, if, for example, there was a, in discovery, for example, if we'd been allowed discovery, there might be things that we'd discover that might give rise, ultimately, to a defense that would- That's why you have examinations under oath, correct? I mean, and that's one of the big things that the insurance company likes to do, which is if you don't show up immediately to the examination under oath, then you're not gonna get an appraisal. Well, there was one- Correct? That's one of your conditions. Right, but the subpoena power is also important, too, to subpoena vendors, to find out what the history of the roost were. Appraisers don't have that power. And ultimately, the appraisers are just trying to look at present tense, or they're talking to- Again, this is a contract provision that your client wanted. And under Florida law, an appraisal clause has certain significance. And one of them is, there's not a lot of discovery. Right. And, Your Honor, I think, respectfully, I'm looking at it as some of the other courts in the Southern District have looked at it as a specific performance issue, and as one court intimated, whether or not, in this forum, we can say that there's no adequate remedy at law. We're not alone with this position. The Southern District has several decisions that touch on this several times. No, I understand, Your Honor, we're not, I just wanna say, we're not alone in this. We're aware of the cases, Counsel, thank you. Counsel, good morning. If you can start with the jurisdictional issue, and your view of it, and then we can do whatever time's left over to discuss the merits. Good morning, Your Honors, Sanjay Kurian with Becker Polycom for Creekside Crossing. With regard to the jurisdictional issues, obviously, we briefed it, we don't believe that jurisdiction is, there is jurisdiction with regard to the 1292 exception. It's not a final judgment, it's not, there's no direct or irreparable impact, we think, on the merits, because. So why is there no direct impact on the merits? So I have your complaint here, let's go to that. Yes, Your Honor. I have your complaint here. Your complaint is, they're all, honestly, very similar to each other. In some cases, almost identical to each other. In paragraph nine, you quote the appraisal language. In paragraph 13, you say that the defendant hasn't agreed to appraisal despite your compliance with the policy conditions. Paragraph 15, you say that the appraisal process is appropriate where there's a disagreement as to amount. And then paragraph 18, as a result of the failure to comply with the appraisal process set forth, you've been forced to retain the undersign and go through the litigation process. Then in your deck action, in paragraphs, after the wherefore clause, paragraphs G, H, I, J, and K are all seeking remedy regarding appraisal. And then in the breach of contract section, it's almost identical to paragraph 41 in the last complaint here, it's paragraph 33. You state that rather than honor the insured's demand for binding appraisal in accordance with the appraisal clause that insure unilaterally breach the policy and you seek remedy regarding that. So the reason I go through this is that would it not have a direct impact on your very complaint to order someone to order appraisal where the remedy you're seeking is to go to appraisal? It's the process we're seeking to get to a whole remedy. Ultimately, the appraisal process doesn't make them pay us. It's certainly part of the remedy. In other words, if there are four elements to a breach of contract action, and one of them is damages, and appraisal decides the damages, that's a partial, whether you call it summary judgment, whether you call it whatever, it's a partial remedy for you for an underlying cause of action, is it not? It has the potential to resolve the damage. How's that not a direct impact under the Alabama versus Army Corps of Engineers case? With regard to the direct impact, and as Your Honor, there's a lot of cases. Our, the position I would take is with regard to a direct impact, it's something that, or irreparable, is something that was not contemplated by this particular provision, right? Meaning that if we were here and we were trying to force them to arbitrate or do something that was not specifically contemplated by the contract, I think that's a slightly different analysis than, hey, this is something that they've put out there, they've put it unilaterally that either side can invoke this. They still have a retained right to deny the claim, right? So with regard, because we could still go through the appraisal now, and they could still come back and theoretically deny the claim under the policy. So I don't think that there is a direct impact in the context of maybe other cases where this process doesn't exist or was not contemplated by the parties. It seems to me, though, that where, under Florida law, the appraisal decides two things. It decides the amount of loss and the scope, the causation issues. And so the Johnson Supreme Court case was in 2002. So let me start with this, Your Honor. This had Empire or any of the other insurance companies and all of these claims that come up with regard to appraisal not want that issue, that to say, hey, under our appraisal language, we are disagreeing with Johnson. We don't want the appraisers to discuss causation, determine causation. It's only amount, they could revise that policy. But in every case I looked at, that first language is if either you or we disagree about the amount, et cetera, it's the same thing in Johnson. And there's the pertained rights at the end. There's some verbiage difference sometimes in the middle, but all of those policies are the same. So had they not wanted to live with the Johnson Supreme Court decision of, hey, because Johnson says exactly this. In a windstorm context, the appraisers can determine that. Council, I don't think anyone disagrees with you that they certainly should lie in the bed that they've dug for themselves. That's, no one is disputing that. But to get to where you want to go, you have to, there has to be some sort of jurisdiction here for us to do it or not jurisdiction. And I guess on the jurisdictional threshold, is it not a direct impact for there to be a decision on appraisal on those two very essential elements of your claim, which is the amount of loss that you suffered and the cause of that loss, whether it's through Hurricane Irma or some independent cause. I disagree then the direct impact because of the existence of this language, Your Honor. It's because it's contemplated by the parties. Had they not contemplated it, then it would be direct and irreparable. I mean, that's a different argument, I think. So with regard to, and I'm trying not to tread over the argument Mr. Boyle has already made. There's a lot of similarities in all of these cases. I just happened to have the one client that Mr. Boyle didn't represent. Are you saying, I guess, I just want to make sure I understand this. You're in essence saying that it can't possibly be an injunction because it's what the parties agreed to. So it is the remedy at law that the parties have agreed to. It's the contractual remedy. The problem is, and I think Judge Luck said it, which was it's alternative dispute resolution, but it's not alternative dispute resolution. And so that's kind of the. You both want to have this both ways. I have to say it's a frustrating thing reading your brief. At different points you all analogize to ADR and then both sides analogize to arbitration. And it seems to me that you have to pick your analogy or your lane and stick with it. I don't think arbitration works because the Florida courts have said this is not arbitration. I don't really think it's ADR because it is contractually agreed to by the parties. In other words, this isn't court ordered mediation or something like that. And so I'm just not sure either of those analogies work. Right, and so I think it's the Positano case. It wasn't our case. I think the Middle District referenced this to being akin to mediation and ordering the parties to go to mediation. I'm not sure that analogy fully works either, but I think we're stuck with what we have here, which is a provision that if Empire has their way, there's no way unless they agree for any insurer to trigger it. Because if you make the demand for the appraisal and then say, OK, well, it's got to be injunctive. But as noted in their case law that they cite, there's a remedy in law. You get damages, right? And we can go through. So there's no injunctive way for us to do that. Theoretically, I guess, in the arguments that you could try the case, be entitled to, or as Judge Schofield said, not to a jury, but at least to the bench and say, OK, we're entitled to this and we conduct whatever hearing. And then we go to appraisal and then we have to come back to argue coverage and try the rest of that case. I guess, theoretically, you could do that that way. But that. You agree it's not irreparable. Which is the. If it was the opposite way. It's a denial of arbitration. I'm sorry, of appraisal. And if the case went forward without you getting to have your appraisal and the case went through, you would have a remedy at law. I think the. So I think you mentioned apartment buildings before. Before the jury, under that circumstance. Under the. No appraisal. So the damages are. Where are they in limbo? Yes. So if we were. What are you going to try the. If there was no court is going to decide the legal issues of coverage. Yes, Your Honor. So if they admit coverage, what would be tried? Then the jury, if there's no appraisal, a jury would have to determine the damages. Some of you can't determine damages because you've agreed to the appraisal damage. Right, right. I agree with Mr. Boyle that as a practical matter, if there is an appraisal and the court determines coverage. I'm talking about having the appraisal after the fact. OK, so. What would be decided by a jury and then you'd have an appraisal? I apologize, Your Honor. I think what I was saying was that theoretically, you could try the case or present the case to the judge to see if there was an entitlement to the appraisal akin to an injunction. Well, that's a legal question. Yes, they wouldn't be to the jury. The party's intent. And we would point to the appraisal. Let's assume that the contract provides for an appraisal. There's no dispute. Right. We think, well, then there's nothing left for the jury to decide, I don't think. I mean, once we get to the appraisal number and the court determines the coverage. Play out my hypothetical. I think that's what Judge Shofat's asking. And I'm interested in the question, too. So district court denies your motion to compel. You then have to go litigate. You'd litigate damages because you need approved damages. Here's how much we owe. You litigate causation. It was caused by Irma. You put some experts up there. And one says it's caused by this. One says it's not caused. Whatever defenses are out there. And you get a verdict. And the verdict was a million dollars less than you think you otherwise would be entitled to. You would appeal and say, A, we're entitled to more. But B, we should have had an appraisal in which we would have gotten the full amount, right? Yes. Obviously, I think it's a little speculative for us to say that last. It's all speculating. But that's how likely this would all play out, correct? Yes. OK. In which case, you would have a remedy at law. Except for the cost of us. Sure. But that's all prejudgment interest and attorney's fees. And the experts. You were made to go through a trial. And if we, yes, your honor. The other thing, and I was starting to say, these are condominium buildings. And so, and I say that with, there is, the association is here, and I represent the association. However, there are unit owners that as a result of this litigation, do have difficulty selling their units, refinancing their units, are subject to special assessments to do the repairs and do those things. None of that's evidence in the record. Yeah, yeah, no, I get that. But to say that there's no, none of that can be compensated to the association. But, yes, your honor. So with regard to, let me see, I apologize. Did I answer your hypothetical? You answered my hypothetical. And why don't you spend the rest of your time going through what we're calling the merits issues. Because whether you're required to go through the Rule 65 or Rule 56 procedures. So with regard to the Rule 65, I think at the end of the day, Empire takes a position that's a process that we have to go through. They're not conceding the process. Meaning they'll be the first one to say, well, there's no reparable harm, and therefore we're done. And I think that it's not an unreasonable analysis for the court to say, well, as your honor has noted, you have money damages. And so an injunctive remedy is not available, ultimately. I think that's likely to happen. So what is our remedy to ultimately get to appraisal? And I don't know that there really is one that. Your position is, I just want to be clear, Rule 65 doesn't apply because inherently you have a money damage remedy. I don't think that's, no. I don't think, see, there's a dispute about whether we have, I mean, there's a, let me just write that. So with regard to the money damage issue, as we're moving along here, I don't think the money damages are sufficient to deal with the time delay. I know prejudgment interests. But dealing with this delay and how long it's taken, it's not what the parties bargained for. It's not what they agreed to. And I don't think that makes them ultimately whole. I think it's the argument, I think, that Empire would make if we had filed an injunctive motion for injunctive remedy. I think their argument would be, hey, nope, you've got these money damages. I don't think that makes us whole at the end of the day, though. So with that. That doesn't answer the question of whether Rule 65 applies. That answers the question of whether you'd win. We want to know, why does Rule 65 not apply? So with regard to Rule 65 . . . The injunction rule. Right. So with regard to why it doesn't apply is, once again, we're back to, I think, the issue of this alternative . . . Rule 65 applies in terms of what a district judge has to do, the issue of coercive order. It's the process, right? You have to go through that . . . Coercive order that you seek. Well, when you say coercive order . . . In my lingo, it's an injunction. Right, meaning because it's supported by contempt order. All right. And so in framing the injunction, the district judge looks at Rule 65. And there are a lot of principles. One is that it's tailored narrowly, as narrow as possible, to give you the relief you seek. Okay. And that's in the order. Right. So I . . . Is that the way it would be? Well, yeah, if we were forced to . . . It should be. Yeah, it should be. If we went through the Rule 65 process, right, I still think that from a procedural standpoint, we'd have to show that there's irreparable harm for us to go through that. We haven't, you know . . . Counsel, can you just answer my question, which is why does it not apply? Why does rules . . . Not apply. Yeah, because I think going back to what Judge Luck said about unfortunately we're both on both sides of this, which is we think it's akin to a arbitration and this dispute resolution process, and it has to be . . . That's the process, and it's not covered by that rule. I was going to . . . With regard to . . . If there are no . . . My time is coming up. We've got about a minute left, so if there's anything else you want to address . . . Yes, Your Honor. With regard to Creekside Crossing, the only other thing is I think we've got . . . There's only two causes of action, as Your Honor has noted. We don't have the one that was pleaded in Positano. No alleged specific performance. Right, and then the other thing is there are no coverage defenses raised in the affirmative defenses. They did raise that our claim is inflated, but there are no failure to comply issues. I think that's important. I think in Positano, there was a failure to comply with some portion of the policy that doesn't exist here in Creekside, and for the foregoing reasons, we'd ask that the court deny the appeal and allow the appraisal to move forward. Thank you. Thank you very much. Counsel, you have five minutes left. Thank you, Your Honor. I don't want to . . . I know we've talked about inadequate remedy of law and all of these things. One of the main issues, reasons we're here today, is really the spontaneous nature of a motion to compel appraisal, which we believe is injunctive relief specific performance, without there being a hearing, and that it's summarily, that if at the very end of the day . . . I'm sorry. Let me stop you a little bit. What this is really about is a little bit about what your opposing counsel in the other cases talked about, which is the rules are not set up to trap people. That's not the purpose of this. The rules are set up to have an efficient resolution of cases, and it seems to me that, by saying it isn't this and it must be this, and then when it gets there, you say, well, it can't be that because it doesn't meet these elements you're essentially having it so that there can't be an appraisal in an efficient time until we go through an entire trial, until my hypothetical lays itself out. I see you shaking your head. Tell me why that's the case. No, that's not how far I'm taking at least some of this argument. There are, appraisals are conducted. When this court issues an injunction and tells us to engage in appraisal, there are ways that appraisals are conducted that we have to provide some kind of, as a court, a court should provide some kind of guidelines pursuant to what it wants the appraisal to accomplish, because evidently that outcome is gonna be taking the place. You as the contract writer, though, do not include those procedural mechanisms in there. Absent, it has to be a generally unbiased person from your selection, a generally unbiased person from my selection. Those people have an umpire. They get together, and if they can't agree, here's the mechanism to resolve it. If that's the only procedure that's listed there, how is it for courts to write those in? Your Honor, well, we're not writing it in. Ultimately, the courts are exercising their equitable powers to have it done. I'm not saying you can't do it. I'm just saying if a court chooses not to do it, how is that an abuse of discretion in any way whatsoever? Well, Your Honor, these are multimillion-dollar claims, very complicated claims with complicated coverage issues. For example- All the more reason for you to write in, and again, I'm using you in the- Right, no, I understand. For you to write in those very exacting procedures as part of the appraisal process. Well, Your Honor, we're still dealing with court powers. I understand- Do that by your response to the motion to compel the appraisal. I'm sorry? File a response to the court. Right. After they file a motion to compel an appraisal, you say, Judge, in your order, say the following. Right. Which would track the contract, as Judge Lux is saying. Right. But ultimately, we have to look at the outcome. The outcome, if, for example, in this case, in Creekside, there was no order- The order would say, you appoint somebody, they appoint somebody, they have an umpire. Right. All enforceable by the contempt power. Right. Okay. What else do you need? Well, we need, for example, insurance determinations of the amount of loss can be complicated. For example, actual cash value- Well, sure, it could be complicated, but they're gonna settle, you've agreed that this is the way they're gonna do it. Well, they can't decide issues of law, you know that. No, no, no, not legally, but you- But there are issues of law inherent in actual cash value. If there are issues of law, then you plead them and the court will decide them. Well, for example, let me just give this example. Actual cash value in the Vasquez versus Citizens case, the court, and acknowledged by 11th Circuit case law on COVID, actually, the court said that matching was not part of ACV. How do we prevent the appraisers, if they don't have a breakdown, to not include matching per Florida law in the ACV? You included, you, umpire, your client, can choose to say, we think that Florida is crazy with appraisals, okay? And we're not gonna proceed with appraisals anymore in our insurance contracts, correct? You could do that, because it's not required under Florida law that you have an appraisal process. Right, Your Honor, the goal, what I'm speaking of is the court's power, when the court exercises its power and ultimately wants an outcome that substitutes itself for the jury, because if we went to a jury trial on ACV, I would have filed- The court's not substituting itself for the jury at all. The appraisal- The court's enforcing the party's agreement. Right, and if we were going to a jury trial, we would file a motion to exclude matching from that process. There is no right to counsel in these appraisals. We've decided that you're gonna do it this way. And if there's a court order for that, we believe that it should put in reasonable measures, which other courts have had in other jurisdictions have done to ensure the fair process. Thank you, Your Honor. Thank you very much. You've had a tough job today, and we appreciate it. We are adjourned for the day. Thank you so much.